IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT R. SCHMIDT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 7508 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| CANADIAN NATIONAL ) | |
| RAILWAY CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Robert Schmidt has sued Canadian National Railway Corp. for its alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. The case is before the Court on defendant's Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment. For the reasons set forth below, the Court grants the motion.

### Facts[1]

Defendant hired plaintiff in September 1999 as a communications equipment technician. (Def.'s LR 56.1(a) Stmt. ¶ 1.) Plaintiff was supervised by Bob Walker, and he worked in defendant's Homewood, Illinois facility. (*Id.*)

---

[1] Unless otherwise noted, the following facts are undisputed.

On November 5, 2003, Walker told plaintiff to stop using a company car to commute to work. (*Id.* ¶ 11.)[2] Schmidt disregarded Walker's instruction. (*Id.* ¶ 13.)[3]

From October 25, 2003 through February 3, 2004, plaintiff was on medical leave. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 13.)

On February 26, 2004, Walker sent plaintiff an e-mail that said:

> Apparently you do not listen very well or value what I tell you to do or think it is important, [sic] whatever the reason I am quite disappointed in your non-action. PARK THE COMPANY VEHICLE AT THE HOMEWOOD ADMINISTRATION BUILDING, [sic] IT IS NOT TO BE USED FOR ANY COMMUTING. THE VEHICLE IS AT YOUR DISPOSAL DURING WORKING HOURS. ARE THERE ANY QUESTIONS?

(Wilson Decl., Tab 1, Schmidt Dep. Ex. 17, E-mail of 2/26/04 to Schmidt from Walker.)

On February 29, 2004, Schmidt sent a letter to Laurent Caron, one of defendant's human resources managers. (*Id.*, Schmidt Dep. Ex. 13, Letter of 2/29/04 to Caron from Schmidt.) In the letter, Schmidt says that Walker was harassing him by restricting his use of a company vehicle. (*Id.*) The letter says nothing about sexual harassment. (*Id.*)

On March 1, 2004, Schmidt sent another letter to Caron. (*Id.*, Schmidt Dep. Ex. 14, Letter of 3/1/04 to Caron from Schmidt.) In the letter, Schmidt says he overheard Walker react angrily, and profanely, to a co-worker's report that Schmidt had not agreed to be on a list of employees available to work in one of defendant's service centers. (*Id.*) Schmidt also said that Walker confronted him about the issue saying: "Listen, you don't want to mess with me! If you don't sign this, I am going

---

[2] Plaintiff's response to this paragraph does not controvert this fact. (*See* Pl.'s LR 56.1(b)(3)(A) Stmt ¶ 11.)

[3] Plaintiff's response to this paragraph does not controvert this fact. (*See* Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 13.)

2

to make your life a living hell! "I'll get you fired! Do you understand me completely?" (*Id.*) The letter says nothing about sexual harassment. (*Id.*)

On March 14, 2004, Schmidt wrote another letter to Caron. (*Id.*, Schmidt Dep. Ex. 15, Letter of 3/14/04 to Caron from Schmidt.) In the letter, Schmidt says that Walker was using access to a company vehicle as "a tool of harassment, intimidation, discrimination or discipline." (*Id.*) In addition, Schmidt said:

> (Friday, October 24, 2003 in late afternoon), "I was sitting at my computer working with my back towards the entrance to my cubicle. With my mind focused on my work at the computer, I could hear Bob Walker talking to others in the surrounding area. Shortly afterwards, I felt both of his hands being applied to both of my shoulders simultaneously with a downward thrust followed by grabbing both shoulder blades. Then he slid both his hands over the [sic] my shoulders and down both my arms simultaneously rubbing them up and down from my elbow back up to the top of my arms and vice versa. In conclusion, he patted me on the back. This entire sequence of events has occurred on 3 other times (always while my back was turned and [sic] involved in my work so I was caught by surprise). I felt very uncomfortable with this and did not and do not welcome such conduct."

(*Id.* (quotation marks in original).)

On March 26, 2004, Schmidt again wrote to Caron. (*Id.*, Schmidt Dep. Ex. 16, Letter of 3/24/04 to Caron from Schmidt.) In the letter, Schmidt says that he notified the help desk that he could not respond to any calls because his wife had their only car and he was not allowed to take a company vehicle home. (*Id.*) Nonetheless, the help desk later asked Schmidt to respond to a call, purportedly at Walker's request. (*Id.*) Schmidt says he had chest pains immediately after this incident and was admitted to the hospital. (*Id.*)

On April 4, 2004, Schmidt wrote a fifth letter to Caron. (*Id.*, Schmidt Dep. Ex. 18, Letter of 4/4/04 to Caron from Schmidt.) In this letter, titled COMPLAINT OF SEXUAL HARASSMENT, Schmidt states his belief that the four instances of arm rubbing and back patting

3

he had reported in his March 14, 2004 letter constituted sexual harassment that violated defendant's anti-harassment policy. (*Id.*)

Caron investigated Schmidt's allegations, but he was unable to substantiate them. (*Id.*, Schmidt Dep. Ex. 19, Letter of 4/7/04 to Schmidt from Caron; Def.'s LR 56.1(a) Stmt. ¶ 25.)[4]

From June 7, 2004 through March 11, 2005, Schmidt was on medical leave from defendant. (Wilson Decl., Tab 1, Schmidt Dep. at 205-14.) On Monday, March 14, 2005, when Schmidt was scheduled to return to work, he went to the hospital because his heart was racing. (*Id.* at 214.) On March 15, 2005, he tendered his resignation because he "felt that [he] had no other choice [than to quit]." (*Id.* at 216.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

---

[4]Plaintiff takes issue with the extent of Caron's investigation, but he does not deny that Caron actually conducted one. (*See* Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 25.)

4

## Discussion

In his first amended complaint, plaintiff alleges that Walker subjected him to hostile work environment sexual harassment.[5] To make a *prima facie* case on this claim, plaintiff must show that: (1) he was subjected to unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature; (2) the harassment was based on sex; (3) the harassment unreasonably interfered with his work performance or created an intimidating, hostile or offensive working environment; and (4) there is a basis for employer liability. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1996).

Plaintiff says he was subjected to the following sexual conduct: (1) Walker rubbed Schmidt on the arms and patted his back on four separate occasions between October 1999 and October 2003 (Wilson Decl., Tab 1, Schmidt Dep. Ex. 15, Letter of 3/14/04 to Walker from Schmidt); (2) in May 2004, Walker told Schmidt to call him often because he liked the sound of Schmidt's voice (*id.*, Schmidt Dep. at 165); (3) Walker regularly made "foul" comments and jokes in the workplace (*id.* at 110); (4) in June 2004, Walker told Schmidt that he wanted Schmidt to work late because Walker was lonesome and wanted to be alone with Schmidt (*id.* at 167-68); and (5) in April 2004, Walker spread his legs and looked suggestively at his crotch when speaking to Schmidt (*id.* at 161-62). That evidence is sufficient to satisfy the first element of plaintiff's *prima facie* case.

The second element requires proof that Walker's alleged conduct was motivated by Schmidt's gender. *Parkins*, 163 at F.3d 1032. Evidence that Walker is a homosexual, that the alleged harassment was "in such sex-specific and derogatory terms . . . as to make it clear that

---

[5]Plaintiff also raises a *quid pro quo* harassment claim. Because neither party addresses that claim in their summary judgment papers, the Court deems plaintiff to have abandoned it.

5

[Walker was] motivated by general hostility to the presence of [men] in the workplace" or that Walker treated women in the workplace differently than men, can provide the necessary proof. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998).

The evidence is sufficient to raise an issue of fact as to whether Walker's alleged conduct was motivated by Schmidt's gender. Standing alone, none of the alleged incidents would be sufficient to do so, but taken together, Walker's arm rubbing, back patting, expressing that he liked the sound of Schmidt's voice, that he was lonely and wanted to be alone with Schmidt, and conspicuously looking at his crotch while speaking to Schmidt all suggest a sexual interest. Thus, a reasonable juror could conclude from the totality of the evidence that Walker's alleged conduct was motivated by Schmidt's gender.

Although he has satisfied the first and second elements, Schmidt fails to satisfy the third and fourth elements. To satisfy the third element, Schmidt must offer evidence that the harassment created an environment that was both objectively and subjectively hostile. *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005). "In evaluating the objective offensiveness of a plaintiff's work environment, we consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with [the] employee's work performance." *Id.* at 677-78.

Schmidt alleges that over a four-year period Walker rubbed his arms and patted his back on four occasions, made "foul" comments and jokes in the workplace, once told Schmidt he liked the sound of his voice, once asked Schmidt to work late because Walker was lonesome and glanced suggestively at his own crotch during a conversation he had with Schmidt. (Wilson Decl., Tab 1, Schmidt Dep. Ex. 15, Letter of 3/14/04 to Walker from Schmidt; *id.*, Schmidt Dep. at 110, 161-62,

6

165, 167-68). While Walker's alleged behavior is not laudable, it was sporadic, it was not physically threatening and there is no evidence that it negatively impacted Schmidt's job performance. Walker's behavior did not, therefore, create an objectively hostile work environment. *See Adusumilli v. City of Chi.*, 164 F.3d 353, 361-62 (7th Cir. 1998) (holding that co-workers' "teasing, ambiguous comments about bananas, rubber bands, and low-neck tops, staring [at plaintiff's breasts] and attempts to make eye contact [with her], and four isolated incidents in which . . . [plaintiff's] arm, fingers, or buttocks" were "briefly touched" was not actionable harassment); *Weiss v. Coca-Cola Bottling Co. of Chi.*, 990 F.2d 333, 337 (7th Cir. 1993) (allegations that supervisor asked plaintiff "for dates, called her a 'dumb blond,' put his hand on her shoulder several times, placed 'I love you' signs in her work area and attempted to kiss her" held not to "meet the standard for actionable sexual harassment").

Schmidt has also not satisfied the last element of the *prima facie* case, which requires evidence that there is a basis for employer liability. Defendant cannot be held liable under Title VII for Walker's alleged harassment if it exercised reasonable care to prevent and correct the harassment and Schmidt unreasonably failed to use the avenues defendant provided to prevent or correct it. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Plaintiff admits that, during his tenure with defendant, the company had a policy prohibiting sexual harassment that set forth the procedure for reporting it. (Wilson Decl., Tab 1, Schmidt Dep. at 114-18; *id.*, Schmidt Dep. Ex. 12, Harassment Policy.) He also admits that he used the internal reporting procedure only once, on March 14, 2004, and then complained only of the four instances of back pats and arm rubs. (*See id.*, Schmidt Dep. Ex. 15, Letter of 3/14/04 to Caron from Schmidt; *id.*, Schmidt Dep. Ex. 18, Letter of 4/4/04 to Caron from Schmidt; *id.*, Schmidt Dep. at 138 (stating that he did not complain of

7

harassment earlier because he "hope[d to] avoid a retaliatory effort from the railroad or any kind of reaction. I was trying to avoid reaction . . . .").[6]

Schmidt implies that it was reasonable for him not to make further complaints of discrimination because: he was "disappointed" with the results of his first complaint and "didn't think anything would be done"; he did not want to "rock[] the boat and [get] a black mark"; defendant had a "'good ol' boy system'" in which "certain people [who worked there had] protection to the point that it [did]n't matter what they d[id]"; and defendant's investigation procedure was a "kangaroo court." (*Id.* at 157-58.) Schmidt offers no evidence in support of these assertions, just his opinion that further complaints would be ignored or lead to retaliation. As our court of appeals has said, however, "an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty . . . to alert the employer to the allegedly hostile environment." *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999). Thus, Schmidt has failed to raise an issue for trial on the last element of the *prima facie* case.

Plaintiff's failure to make a *prima facie* case of sexual harassment dooms his claim. Defendant's motion for summary judgment on this claim is, therefore, granted.

Plaintiff also alleges that defendant violated Title VII by retaliating against him for complaining about the sexual harassment. Having no direct evidence of retaliation, Schmidt must establish that he engaged in a statutorily protected activity, met defendant's legitimate expectations, suffered an adverse employment action and was treated less favorably than similarly situated

---

[6]Schmidt says he wanted to report the harassment earlier, but one of his co-workers and his union president, who was not employed by defendant, advised him not to do so. (*See* Wilson Decl., Tab 1, Schmidt Dep. at 101-03.) The fact that Schmidt took the advice of two individuals who had no authority to speak for defendant with regard to workplace sexual harassment does not excuse him from the reporting obligation set forth in *Faragher*.

8

employees who did not engage in statutorily protected activity, to make a *prima facie* case on this claim. *Racicot*, 414 F.3d at 678. Defendant says that Schmidt has no evidence to support the first element, that he engaged in statutorily-protected activity.

The Court agrees. Schmidt's only arguably protected activity was the March 14, 2004 letter to Caron in which he complained that Walker had rubbed his arms and patted his back four times in a four-year period. That letter constitutes protected activity if the conduct Schmidt reported actually violated Title VII or if Schmidt reasonably believed that it did. *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1457-58 (7th Cir. 1994) (stating that plaintiff "need not succeed on her sexual harassment claim to make out a *prima facie* case of retaliatory discharge. Instead, it is sufficient if the plaintiff has a reasonable belief that she is challenging conduct that violates Title VII.") (alterations and quotation omitted). As noted above, the conduct Schmidt reported does not constitute sexual harassment. Thus, his letter to Caron is protected activity only if Schmidt reasonably believed that it did.

Whether Schmidt reasonably believed Walker's conduct constituted sexual harassment is determined in light of the legal standard for proving a harassment claim. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (per curiam). "[S]exual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quotations omitted); *see Racicot*, 414 F.3d 675, 677-78 (stating that court considers "all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with [the] employee's work performance" in determining whether work environment is abusive).

Given the legal standard, Schmidt could not reasonably have believed that Walker's behavior created an objectively hostile work environment. *See Breeden*, 532 U.S. at 271 (holding that complaint about a single sexual comment did not constitute protected activity because "[n]o reasonable person could have believed that [a] single [comment] violated Title VII[]"). The Court holds, therefore, that Schmidt did not engage in statutorily-protected activity.

Even if he had engaged in protected activity, defendant says Schmidt's claim would still fail because he did not suffer an adverse employment action. In defendant's view, none of the acts of retaliation Schmidt identifies – "discouraging" him from reporting an on-the-job injury by providing him with the wrong forms, forcing him to use vacation time when he was off of work due to an injury; changing his job duties; refusing to resolve the company vehicle issue; ordering him to sign up to be on call for the service center; allowing Walker to commit battery on him; "omitting him from an opportunity to bid" on another job; changing his work hours and requiring him to work extra hours; and making him the subject of investigations while he was on medical leave (*see* Pl.'s Resp. at 4-5) – caused a materially adverse change in the terms or conditions of Schmidt's employment. *See Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993) (stating that an adverse employment action is one that makes "a materially adverse change in the terms and conditions of employment").

Whether these actions, singly or in combination, amounted to an adverse employment action is not, however, an issue we must decide because plaintiff has no evidence to support the last element of his claim. Schmidt has offered no facts to suggest that any other employee, similarly situated or otherwise, received more favorable treatment than he. Therefore, even if had suffered

an adverse employment action, Schmidt still could not defeat defendant's motion on his retaliation claim.

## Conclusion

For the reasons set forth above, defendant is entitled to a judgment as a matter of law. Defendant's motion for summary judgment is, therefore granted. Because the Court did not rely on the facts defendant sought to strike from plaintiff's response to defendant's LR 56.1(a) Statement and his affidavits, defendant's motions to strike [doc nos. 49 & 53] are stricken as moot.

**SO ORDERED.**  ENTERED: 2/28/2006

*[signature]*
**HON. RONALD A. GUZMAN**
**United States District Judge**